January 4, 2011

Raymund A. Paredes, Ph.D.　　　　　　　　　Opinion No. GA-0830
Commissioner of Higher Education
Texas Higher Education Coordinating Board　　Re: Authority of a community college to purchase
Post Office Box 12788　　　　　　　　　　　liability insurance to cover claims arising from the
Austin, Texas 78711　　　　　　　　　　　operation of a child-care center (RQ-0846-GA)

Dear Commissioner Paredes:

You ask whether the Texas Constitution forbids San Jacinto College (the "College") from purchasing liability insurance coverage for operating child-care centers.[1] You explain that the College operates child-care centers licensed by the Texas Department of Family and Protective Services. Request Letter at 1. Section 42.049 of the Human Resources Code requires licensed child-care centers to maintain liability insurance. TEX. HUM. RES. CODE ANN. § 42.049(a) (West 2001). You are concerned that the College would receive nothing in return for buying liability insurance because the College is generally immune from liability. College Brief at 2. Consequently, you ask whether complying with section 42.049 would violate article III, section 52(a), of the Texas Constitution, which forbids public funds from being used for private purposes. See TEX. CONST. art. III, § 52(a) (prohibiting the Legislature from authorizing a political subdivision "to grant public money or thing of value in aid of, or to any individual, association or corporation"); see also Request Letter at 1.

Article III, section 52(a), prohibits political subdivisions from making "gratuitous payments." Tex. Mun. League Intergovernmental Risk Pool v. Tex. Workers' Comp. Comm'n, 74 S.W.3d 377, 383 (Tex. 2002).[2] A payment is not "'gratuitous' if the political subdivision receives return consideration." Id. Thus, the College could purchase liability insurance under section 42.049 without violating article III, section 52(a), if the College received consideration in return.

While a community college's operation of a child-care facility might come within the scope of sovereign immunity, we have found no authority definitively declaring that it does. Indeed, Texas

---

[1] See Request Letter at 1; Memorandum attached to Request Letter from San Jacinto College at 1 [hereinafter College Brief] (documents available at http://www.texasattorneygeneral.gov).

[2] The College is a political subdivision of the state. Goss v. San Jacinto Junior Coll., 588 F.2d 96, 98–99, modified per curiam on reh'g, 595 F.2d 1119 (5th Cir. 1979).

law waives governmental immunity "for . . . personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment" arising from the "operation or use of a motor-driven vehicle or motor-driven equipment" or from "a condition or use of tangible personal or real property" if the employee would be personally liable. TEX. CIV. PRAC. & REM. CODE ANN. § 101.021 (West 2005).[3] Furthermore, the College may be liable under federal laws that are beyond the reach of state immunity. *See Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 690–91 (1978) (holding that local governments may be liable for claims under 42 U.S.C. § 1983).

Because under certain circumstances the College could be liable for damages under state or federal law, purchasing liability insurance would not be gratuitous. In return for purchasing insurance, the insurer, not the College, would be obligated to pay for a compensable injury up to the amount permitted by the insurance policy and state law. Therefore, complying with section 42.049 of the Human Resources Code would not violate article III, section 52(a), of the Texas Constitution.

Furthermore, the College could be entitled to legal defense if it were sued or threatened with suit. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchs. Fast Motor Lines*, 939 S.W.2d 139, 141 (Tex. 1997) (explaining that an insurer's duty to defend is determined by the allegations in the pleadings and the terms of the underlying policy); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Ins. Co. of N. Am.*, 955 S.W.2d 120, 138 (Tex. App.—Houston [14th Dist.] 1997), *aff'd, Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 20 S.W.3d 692 (Tex. 2000) (noting that insurance carriers generally have a duty to provide legal defense for the insured). Thus, even if the College were sued over an injury for which it could not be liable, the College could still receive legal representation necessary to advance its immunity in return for maintaining insurance. Therefore, the College could maintain liability insurance under section 42.049 without violating article III, section 52(a), regardless of whether the College were immune from suit or liability.

---

[3]Section 42.049 requires a licensed child-care center to "maintain liability insurance coverage in the amount of $300,000 for each occurrence of negligence" involving "injury to a child" who is on the center's premises or in its care. TEX. HUM. RES. CODE ANN. § 42.049(a) (West 2001). The section 42.049 coverage requirement appears to be consistent with chapter 101 of the Civil Practice and Remedies Code, which limits the liability of a unit of local government, other than a city, to "money damages in a maximum amount of $100,000 for each person and $300,000 for each single occurrence for bodily injury or death." TEX. CIV. PRAC. & REM. CODE ANN. § 101.023(b)–(c) (West 2005).

## S U M M A R Y

A college could purchase liability insurance under section 42.049 of the Human Resources Code without violating article III, section 52(a), of the Texas Constitution.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

DANIEL HODGE
First Assistant Attorney General

DAVID J. SCHENK
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Jason Boatright
Assistant Attorney General, Opinion Committee